## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIAN DONNELLY                          *

     Plaintiff                    *

v.                                      *        Case No. 08-cv-82 JJF

SLINGSHOT SPORTS LLC                    *

     Defendant                    *

  *    *    *    *    *    *    *    *    *    *    *

### PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

Plaintiff, Brian Donnelly, by and through his attorneys, Gil Shelsby and Michael Logullo of

Shelsby & Leoni, P.A. and Paul D. Bekman and Gregory G. Hopper of Salsbury, Clements, Bekman,

Marder & Adkins, L.L.C., hereby files his Opposition to the Motion to Dismiss filed by Defendant,

Slingshot Sports LLC, and, in support thereof, states as follows:

### I.     INTRODUCTION

Brian Donnelly was seriously injured on August 21, 2004 while using a kiteboarding system

designed, manufactured, and sold by Slingshot Sports on navigable water off the coast of Dewey

Beach, Delaware. The Slingshot system used a large kite with an inflatable leading edge to catch the

wind and pull a rider standing on a board across the top of the water. A series of lines ran from the

edges of the kite down to a control bar and harness. The rider could use the control bar to steer the

kite and propel himself in any direction.

1

Mr. Donnelly alleges that on the day he was injured, he was traveling across the top of the water when a gust of wind lofted him high into the air. Because the kiteboarding system did not have a sufficient and accessible safety release system, Mr. Donnelly could not depower the kite nor detach himself from the harness. While he watched helplessly, he was carried back towards shore and dropped with great force into the shallow water at the edge of the beach. As a result, his cervical and thoracic spine were fractured in several places, his ribs were fractured in several places, his clavicle and scapula were fractured, and he suffered a bilateral hemothorax and left pneumothorax.

Mr. Donnelly filed a products liability lawsuit against Slingshot Sports alleging that the kiteboarding system was dangerous and defective because it did not incorporate adequate safety mechanisms or systems that would have allowed him to depower the kite or release or disconnect himself from the kite before he was carried back toward the shallow water at the edge of the shore. Because the tort occurred on navigable waters, he invoked federal admiralty jurisdiction under 28 U.S.C. § 1333(1).

In response to the Complaint, Slingshot Sports filed a Motion to Dismiss for lack of subject matter jurisdiction, asserting that Mr. Donnelly was not entitled to invoke the Court's admiralty jurisdiction because a kiteboard system was not intended to transport personnel, equipment, passengers or cargo; the incident did not have an effect on maritime shipping; and the incident did not arise out of an error of navigation.[1]

---

[1]    Slingshot Sports asserts that Delaware common law "should be applied and enforced." See Mem. of Pts. and Auth. at ¶ 4. However, it does not provide any reason for its assertion other than claiming that "plaintiff has brought his Complaint under the theory of common law negligence, strict liability, and breach of warranty." Id. This assertion is patently false and nonsensical. As outlined throughout this Opposition, federal courts routinely apply federal products liability law in admiralty cases. See, e.g., East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864-65 (1986) ("With admiralty jurisdiction comes the application of substantive admiralty law" and "We

2

As outlined in more detail below, Slingshot Sports' Motion to Dismiss fundamentally misstates federal law and the cases discussing admiralty jurisdiction. The Supreme Court and federal courts around the country have applied admiralty law in a number of products liability cases that involved defective and dangerous recreational equipment that caused injuries to users on navigable water. Given that the incident at issue occurred on navigable water, had the potential to disrupt maritime commerce, and arose out of the design, manufacture, and use of a piece of recreational equipment that was meant to be used on navigable water, admiralty jurisdiction is appropriate and the Motion to Dismiss should be denied.

## II.    STANDARD OF REVIEW

### A.    THE MOTION TO DISMISS STANDARD

In its Motion to Dismiss, Slingshot Sports challenges the Court's subject matter jurisdiction by asserting that the Complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction.[2] In evaluating a Rule 12(b)(1) motion based upon the pleadings, the court "must assume that the allegations contained in the complaint are true." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir. 1997). Under these circumstances, the Court can only dismiss the

---

join the Court of Appeals in recognizing products liability, including strict liability, as part of the general maritime law").

[2]     A defendant may also challenge a federal court's jurisdiction by factually attacking the plaintiff's jurisdictional allegations by attaching affidavits, depositions, and testimony. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,891 (3rd Cir. 1997). Slingshot Sports does not attack the Court's jurisdiction in this manner in its Motion. Should Slingshot Sports change the nature of its attack in its Reply, Mr. Donnelly requests that a ruling on the Motion be stayed pending foundational discovery in this case.

Complaint if it appears to a <u>certainty</u> that Mr. Donnelly will not be able to assert a colorable claim of subject matter jurisdiction. See <u>id</u>.

## B.  THE ADMIRALTY JURISDICTION STANDARD

A party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of location[3] and connection[4] with maritime activity. The location test asks the Court to determine "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995). The connection test raises two issues. First, a court "must 'assess the general features of the type of incident involved' to determine whether the incident has 'a potentially disruptive impact on maritime commerce.'" <u>Id</u>. (quoting <u>Sisson v. Ruby</u>, 497 U.S. 358, 363 and 364 n. 2 (1990)). Second, "a court must determine whether 'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" <u>Id</u>. (quoting <u>Sisson</u>, 497 U.S. at 365, 364, and n. 2).

## III.  ARGUMENT

## A.  MR. DONNELLY'S COMPLAINT SATISFIES THE LOCATION TEST BECAUSE THE INJURY PRODUCING ACTION OCCURRED ON NAVIGABLE WATER.

The first question a court must ask when evaluating admiralty jurisdiction is "whether the tort occurred on navigable water."[5] <u>Grubart</u>, 513 U.S. at 534. In answering this question in a

---

[3]    The "location" requirement is also often referred to as a "situs" requirement.

[4]    The "connection" requirement is also often referred to as the "nexus" requirement.

[5]    The location test is also satisfied if the injury was suffered on land, as long as it was caused by a vessel on navigable water. The Supreme Court's decision in <u>Jerome B. Grubart, Inc. v. Great</u>

maritime products liability case, the focus is not on where the product was designed or manufactured, but instead on where the product was located when the injury producing action occurred.

Several cases demonstrate this point. In <u>Yamaha Motor Corp. v. Calhoun</u>, 516 U.S. 199, 206 (1996), for example, the Supreme Court held that admiralty jurisdiction existed in a products liability claim against the designer and manufacturer of a jet ski personal watercraft even though the design and manufacture of the product occurred on land. The Court reasoned that the product was designed and manufactured to transport a person across navigable water and the defect did not cause an injury until it was used in that manner. <u>See</u> <u>id</u>.

Similarly, in <u>Burke v. Quick Lift, Inc.</u>, 464 F.Supp.2d 150, 155 (E.D.N.Y. 2006), a District Court held that admiralty jurisdiction existed in a products liability claim against the manufacturer of a hydraulic davit, a device that lifts a dinghy from the water onto a boat, for damage caused when the davit malfunctioned. Rejecting that argument that admiralty jurisdiction did not apply because the davit was designed, manufactured, and installed on land, the Court held reasoned that "the tort

---

<u>Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995), illustrates this point. In that case, building owners sued the Great Lakes Dredge and Dock Company alleging that its employees negligently failed to repair wooden bridge pilings and, as a result, caused their waterfront properties to be flooded. Rejecting the argument that admiralty jurisdiction did not exist because the injury – damage to the properties – occurred on land, the Court explained that it was enough that the injury producing action occurred on navigable water. <u>See</u> <u>id</u>.

'occurred' on navigable waters because the negligence 'took effect' while the [owners'] vessel was docked at a port on navigable waters." Id.

Finally, in Mink v. Genmar Industries, Inc., 29 F.3d 1543, 1546 (11th Cir. 1994), the Eleventh Circuit rejected a recreational boat manufacturer's argument that admiralty jurisdiction did not apply in a case involving a slip and fall on a boat because the alleged failure – failing to design the boat with adequate handrails – occurred on land. The Court reasoned that admiralty jurisdiction was appropriate because the "defect could not have manifested itself, and the injury could not have occurred, until the vessel was actually operated as a vessel in navigation." Id.

Mr. Donnelly's products liability claim against Slingshot Sports satisfies the location test. On its face, the Complaint alleges that Mr. Donnelly was injured while riding the Slingshot kiteboard system "on navigable waters off the coast of Dewey Beach, Delaware." See Compl. at ¶ 1 and 6. Mr. Donnelly was lofted into the air, carried back toward shore, and injured when he fell into the shallow waters at the edge of the shore. See id. at ¶ 6. Slingshot does not attack these allegations in its Motion nor provide any evidence to suggest that these allegations are factually incorrect. In fact, it admits that the tortuous acts occurred in a "maritime locality." See Mem. of Pts. and Auth. at ¶ 3.

Contrary to Slingshot Sports' argument, a kiteboarding system is a "vessel" under federal law. Section 3 of the United States Code states that a "vessel . . . includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3 (West 2008). By design, a kiteboarding system uses a kite, in much the same way a small, single passenger boat uses a more traditional sail, to propel a person standing on a board across the top of the water from one point to the next. If being attached to a large kite by

6

cords and a harness and having a board strapped to your feet did not cause a rider to be propelled across the surface of the water, kiteboarding would not be much fun. The whole point is movement – being transported from one spot to the next.[6]

Additionally, many courts have applied admiralty jurisdiction to artificial contrivances that did not transport "personnel, equipment, passengers, or cargo." This Opposition has citations to numerous cases involving jet skis, kayaks, Hobie Cats, surfboards, and other recreational vessels. The fact that these Courts applied admiralty law to vessels that were never intended to transport personnel, equipment, passengers, or cargo, demonstrates the weakness of Slingshot Sports' argument.[7]

**B.    MR. DONNELLY'S COMPLAINT SATISFIES THE CONNECTION TEST. AN INCIDENT CAUSED BY A DEFECTIVELY DESIGNED KITEBOARDING SYSTEM HAS THE POTENTIAL OF DISRUPTING MARITIME COMMERCE. AND, DESIGNING AND MANUFACTURING KITEBOARDING SYSTEMS FOR USE ON NAVIGABLE WATER AND USING THEM FOR RECREATION ARE TRADITIONAL MARITIME ACTIVITIES.**

To evaluate whether a claim meets the connection test, a court must ask two questions: whether the general features of the type of incident involved has a potentially disruptive impact on maritime commerce and whether the general character of the activity shows a substantial relationship

---

[6]    Based upon material found on Slingshot Sports' website, it appears that the company has sponsored long distance races and other events in which participants traveled over one hundred miles using their kiteboarding systems.

[7]    Slingshot Sports asserts that Mr. Donnelly was not using his kiteboard as a means of transportation at the time of his injury. See Mem. of Pts. and Auth. at ¶ 2. It is difficult to determine what this cryptic statement means. It should be noted, however, that Mr. Donnelly alleges in his Complaint that he was riding his kiteboarding system on the surface of the water in Dewey Beach at the time of the occurrence. See Compl. at ¶ 1.

7

to traditional maritime activity. See Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 365, 364, and n. 2).

## 1.    An incident caused by a defectively designed kiteboarding system has the potential to disrupt maritime commerce.

In deciding whether a claim satisfies the disruption of maritime commerce test, a Court must look at the "general features" of the incident and its "potential effects" on maritime commerce, "not to the 'particular facts of the incident.'" Id. at 538 (citing Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249 (1972) and Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982)); see also Sisson, 497 U.S. at 364 ("The jurisdictional inquiry does not turn on the actual effects on maritime commerce" arising from the tortuous event, but instead on the "potential disruption to commercial maritime activity") (emphasis in original). Viewed properly, the question that should be asked is "whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." Id. (emphasis added).

The potential disruption test is interpreted very broadly. In Sisson v. Ruby, 497 U.S. 358, 362 (1990), a seminal case, the Supreme Court held that a fire caused by a defective washer/dryer unit in a large pleasure yacht docked in a recreational marina "plainly satisfy[ied]" the "potential hazard to maritime commerce" test even though the yacht was not a commercial vessel, there was no evidence that maritime commerce was actually disturbed by the fire, and the marina did not house (and likely would never house) a single commercial vessel.

The reasoning of the Court in <u>Sisson</u> is even more compelling in cases involving out-of-control recreational vessels, people in need of rescue, or people injured in the water.[8] In <u>Szollosy v. Hyatt Corp.</u>, 208 F.Supp.2d 205 (D.Conn. 2002), for example, a District Court held that a defectively designed jet ski driven by an improperly supervised child that hit a breakwater (a long barrier in the water meant to cause waves to break away from a protected space closer to shore) met the test. The Court reasoned that the incident had the potential of disrupting maritime commerce on several fronts: (1) "[a] young child's allegedly untrained and unaccompanied ride of a jet ski in navigable waters clearly pose[d] a hazard to navigation;" (2) "the breakwater . . . could have been a commercial boat;" (3) "the ensuing investigation into the crash could have made commercial navigation in and around the [navigable waters] difficult;" and (4) "the emergency medical treatment of [the child] in the water . . . carried the potential to disrupt maritime commerce." <u>Id.</u>

Similarly, in <u>Roane v. Greenwhich Swim Committee</u>, 330 F.Supp.2d 306 (S.D.N.Y. 2004), a swimmer sued a boat manufacturer and other defendants for injuries he sustained during a rescue attempt. Holding that the products liability claim met the potential disruption test, the Court explained that "Long Island Sound is traversed by commercial vessels of various sizes and purposes, and those on board a boat in the Sound giving their full attention to the saving of the life of a swimmer in difficulty may well be distracted from hazards posed by the approach of other boats unaware of the rescue in progress or coming at speed in an effort to assist." <u>Id.</u> at 315.

---

[8]    The <u>possibility</u> of an injury is often enough to satisfy the potential disruption test. In <u>Burke v. Quick Lift, Inc.</u>, 464 F.Supp.2d 150, 156 (E.D.N.Y. 2006), the davit lift previously, a District Court found that the "the improper installation and subsequent failure of the lift had the potential of disrupting commercial traffic because of "medical treatment [for] persons who may have been injured by the failed equipment."

Along the same lines, in Mink v. Genmar Industries, Inc., 29 F.3d 1543 (11th Cir. 1994), the Eleventh Circuit held that a passenger on a high speed pleasure boat who fell while the boat was being operated at high speed met the potential disruption test. Though it acknowledged that there was no actual disruption of maritime commerce, the Court held that there was a potential disruption because the plaintiff "could have fallen forward, striking the pilot or controls, thus directly interfering with the navigation of the craft and potentially causing an accident with another craft. Or, the disruption of a serious passenger injury within such intimate confines could have distracted the pilot and indirectly interfered with the navigation of the vessel." Id. at 1546.

In fact, a number of cases involving personal injuries caused by recreational equipment like surfboards and kayaks have been held to satisfy the potential disruption test. In Taghadomi v. United States, 401 F.3d 1086 (9th Cir. 2005), for example, the Ninth Circuit held that the Estate of a kayaker who died off the coast of Hawaii met the test, explaining that search and rescue operations for recreational users have the potential of disrupting commercial activity "no matter the purpose of the kayaker's excursion at sea." A similar conclusion was reached in LeBlanc v. Cleveland, 198 F.3d 353 (2nd Cir. 1999), a Second Circuit case involving a kayaker who collided with a pleasure boat. And, in Davis v. City of Jacksonville Beach, 251 F.Supp. 327, 328 (M.D.Fla. 1965), a District Court held that an incident involving a surfboard met the test. While conceding that the "accident produced no direct or indirect influence on shipping and commerce," the Court explained that "a surfboard, by its very nature, operates almost exclusively on the high seas and navigable waters, and, just like a small canoe or raft, potentially can interfere with trade and commerce." Id.

---

Mr. Donnelly's products liability claim against Slingshot Sports satisfies the potential disruption of maritime commerce test. He alleges that the Slingshot Sports kiteboarding system was defective because it did not contain a safety release that allowed users to free themselves if a gust of wind lofted users high into the air or caused them to lose control. As the Courts in Szollosy, Burke, Roane, Mink, Taghadomi, LeBlanc, Davis, and others have concluded, this type of incident plainly has the potential of disrupting maritime commerce. An out-of-control kiteboarder could be swept out to sea, collide with a recreational or commercial vessel, or be seriously injured, all of which would require search and rescue or medical response efforts, assistance by vessels in the area, or otherwise disrupt commercial traffic. At the very least, this case falls within the class of incidents which post more than a fanciful risk to commercial activity.

2. **Designing and manufacturing recreational equipment (like kiteboarding systems) for use on navigable water and using them for recreational purposes are traditional maritime activities.**

In deciding whether a claim satisfies the traditional maritime activity test, a Court must look at the "general character of the activity giving rise to the incident" and ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply . . . ." Grubart, 513 U.S. at 539 (emphasis added); see also Taghadomi, 401 F.3d 1080 (9th Cir. 2005) ("the proper inquiry 'is not merely the event immediately surrounding the injury; it is the behavior of any 'putative tortfeasor' . . . that is an 'arguably proximate cause' of the injury'").

Recognizing that a case can be categorized many ways, the Supreme Court has advised that courts "need to look only to whether one of the arguably proximate causes of the incident originated

11

in the maritime activity of a tortfeasor: as long as one of the putative tortfeasors was engaged in traditional maritime activity the allegedly wrongful activity will 'involve' such traditional maritime activity and will meet the second nexus prong." Id. at 541. "Traditional maritime activities" go beyond navigation, including all of the "traditionally undertaken by vessels, commercial or noncommercial." Sisson v. Ruby, 497 U.S. 358, 367 (1990). The inquiry is a broad one. As the Court has explained, "virtually every activity involving a vessel on navigable waters would be a traditional maritime activity sufficient to invoke maritime jurisdiction." Id. at 542.

Based upon this analysis, the design and manufacture of an allegedly defective recreational vessel meets the traditional maritime activity test. A number of cases make this point clear. [9] In Hassinger v. Tideland Elec. Membership Corp., 781 F.2d 1022 (4th Cir. 1986), for example, the Fourth Circuit considered whether a products liability claim against the designer and manufacturer of a Hobie Cat sailboat met the traditional maritime activity test. In that case, two recreational sailors died when the ungrounded mast of their Hobie Cat sailboat hit an energized, uninsulated power line.

---

[9]    In its Motion, Slingshot Sports cites Crosson v. Vance, 484 F.2d 840 (4th Cir. 1978) and Souther v. Thompson, 754 F.2d 151 (4th Cir. 1985) for several propositions critical to its argument: "[a]n allegation of navigational error is key to establish admiralty jurisdiction when dealing with small pleasure craft," water skiing is not a "traditional maritime activity," and admiralty jurisdiction is for the "protection and promotion of the maritime shipping industry." See Mem. of Pts. and Auth. at ¶ 3. It should be noted that the Fourth Circuit abandoned these positions after the Supreme Court issued its decision in Sisson. See Hogan v. Overman, 767 F.2d 1093 (4th Cir. 1985) (applying admiralty jurisdiction in a non-navigational water skiing case); Hassinger v. Tideland Elec. Membership Corp., 781 F.2d 1022 (4th Cir. 1986) (affirming admiralty jurisdiction in a products liability case involving a small sailboat that did not involve allegations of a navigational error); Hardwick v. Pro-Line Boats, 895 F.Supp. 145, 147 n. 2 (S.D.Tex. 1995) (concluding that the positions in Crosson and Souther "seem[] to have been abandoned in more recent rulings"); and Wright v. U.S., 883 F.Supp. 60 (D.S.C. 1994) (finding that Crosson and Souther were of "doubtful validity" after Sisson).

12

Finding that "one of the purposes of admiralty law is to protect [recreational] sailors from defective equipment while they are engaged in maritime activity," the Court held that their claim satisfied the test. Id. Similarly, in Roane v. Greenwhich Swim Committee, 330 F.Supp.2d at 314-15, discussed in the previous section, a District Court held that a products liability claim against a recreational boat manufacturer met the test, stating that "[t]he proper design and manufacture of a vessel intended for use on navigable waters bears a substantial relationship to traditional maritime activity." The same conclusion was reached in Acceptance Ins. Co. v. SDC, Inc., 952 F.Supp. 644, 646 (E.D.Mo. 1997), a products liability case against the manufacturer of a defective seat base for a recreational boat, Burke v. Quick Lift, Inc., 464 F.Supp.2d at 156, discussed previously, a products liability claim against the manufacture of a davit lift. As the Burke Court explained, a products liability claim against a lift manufacturer "bears a substantial relationship to the traditional maritime activity of the manufacture and design of a pleasure boat."

In addition, riding a recreational vessel on navigable waters constitutes a traditional maritime activity. As the Supreme Court stated in Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674-75 (1982), "traditional maritime activity" is not limited to commercial maritime activity" because the "federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity." Instead, the federal interest requires that "all operators of vessels on navigable waters are subject to uniform rules of conduct." Id. at 675 (emphasis added).

Following this analysis, federal appellate and trial courts around the United States have held that riding recreational equipment meets the substantial relationship test. A number of these cases

involve jet skis. See Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206 (1996); Calhoun v. Yamaha Motor Corp., 216 F.3d 338, 344-45 (3rd Cir. 2000); Waggoner v. Nags Head Water Sports, Inc., 141 F.3d 1162 (4th Cir. 1998); Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1086-87 (2nd Cir. 1993); Szollosy v. Hyatt Corp., 208 F.Supp.2d 205, 213 (D.Conn. 2002). Others involve non-motorized recreational equipment like kayaks. See Taghadomi v. United States, 401 F.3d 1086 (9th Cir. 2005) and LeBlanc v. Cleveland, 198 F.3d 353 (2nd Cir. 1999).

Mr. Donnelly's products liability claim against Slingshot Sports satisfies the traditional maritime activity test two ways. First, this case involves the design and manufacture of an allegedly defective recreational vessel that Slingshot Sports knew would be used on navigable water. In his Complaint, Mr. Donnelly plainly alleges that Slingshot Sports

> designed, manufactured, assembled, distributed, sold, and placed the Slingshot Fuel kiteboarding system into the stream of commerce and, when it was used by Brian Donnelly in a reasonable, foreseeable, and anticipated manner, it was defective and unreasonably dangerous because it . . . did not incorporate adequate safety mechanisms or release systems to allow users or operators of the kiteboarding system to depower or collapse their kites to prevent injuries in foreseeable lift-off or lofting situations [and] did not incorporate adequate safety mechanisms or release systems to allow the users or operators of the kiteboarding system to release or disconnect themselves from the bar to prevent injures in foreseeable lift-off or lofting situations . . . .

See Complaint at ¶ 12. As the Courts in Hassinger, Roane, Acceptance, Burke, and other cases have concluded, the act of designing and manufacturing such a product is a traditional maritime activity.

Independently, this case involves the riding of a recreational vessel on navigable water. Just like the people who were injured while riding jet skis in Calhoun, Waggoner, Wahlstrom, and Szollosky and kayaks in Taghadomi and LeBlanc, Mr. Donnelly was riding a recreational vessel on navigable water at the time he was injured. Because traditional maritime activities include

14

recreational activities, and people have been using vessels for non-commercial pursuits for thousands of years, Mr. Donnelly's actions plainly meet the traditional maritime activity test.

## IV.    CONCLUSION

As outlined above, Slingshot Sports' Motion to Dismiss fundamentally misstates federal law and the cases discussing admiralty jurisdiction. The Supreme Court and federal courts around the country have applied admiralty law in a number of products liability cases that involved defective and dangerous recreational equipment that caused injuries to users on navigable water. Given that the incident at issue occurred on navigable water, had the potential to disrupt maritime commerce, and arose out of the design, manufacture, and use of a piece of recreational equipment that was meant to be used on navigable water, admiralty jurisdiction is appropriate and Slingshot's Motion should be denied.

Respectfully submitted,

  /s/ Gilbert F. Shelsby, Jr. _____
Gilbert F. Shelsby, Jr.
Gshelsby@mslde.com
  /s/ Michael J. Logullo _____
Michael J. Logullo
Mlogullo@mslde.com
Shelsby & Leoni, PA
221 Main Street
Stanton, Delaware 19804

Paul D. Bekman
Gregory G. Hopper
Salsbury, Clements, Bekman, Marder & Adkins
300 West Pratt Street, Suite 450
Baltimore, Maryland 21201

DATED: May 2, 2008                    Attorneys for Plaintiff

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIAN DONNELLY                            *

      Plaintiff                        *

v.                                        *        Case No. 08-cv-82 JJF

SLINGSHOT SPORTS LLC                      *

      Defendant                        *

### REQUEST FOR HEARING

    Plaintiff, Brian Donnelly, by and through his attorneys, respectfully requests a Hearing on

the Motion to Dismiss filed by Defendant, Slingshot Sports, LLC.

    Respectfully submitted,

                /s/ Gilbert F. Shelsby, Jr.
                Gilbert F. Shelsby, Jr.
                Gshelsby@mslde.com
                /s/ Michael J. Logullo
                Michael J. Logullo
                Mlogullo@mslde.com
                Shelsby & Leoni, PA
                221 Main Street
                Stanton, Delaware 19804

                Paul D. Bekman
                Gregory G. Hopper
                Salsbury, Clements, Bekman, Marder & Adkins
                300 West Pratt Street, Suite 450
                Baltimore, Maryland 21201

DATED: May 2, 2008          Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BRIAN DONNELLY | * | |
| Plaintiff | * | |
| v. | * | Case No. 08-cv-82 JJF |
| SLINGSHOT SPORTS LLC | * | |
| Defendant | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**ORDER**

Upon consideration of the Motion to Dismiss filed by Defendant, Slingshot Sports LLC, and the Opposition filed by Plaintiff, Brian Donnelly, it is, on this _____ day of _____, 2008, HEREBY ORDERED that the Motion be, and hereby is, DENIED.

_____

Judge, United States District Court for Delaware

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BRIAN DONNELLY                          *

    Plaintiff                          *

v.                                      *    Case No. 08-cv-82 JJF

SLINGSHOT SPORTS LLC                    *

    Defendant                          *

  *   *   *   *   *   *   *   *   *   *   *

### CERTIFICATE OF SERVICE

I, Michael J. Logullo, Esquire, hereby certify that on the 2nd day of May, 2008, that a copy of the foregoing Plaintiff's Opposition to Motion to Dismiss were served via CM/ECF and first class mail upon the following:

    Thomas J. Gerard, Esquire
    MARSHALL DENNEHEY WARNER
    COLEMAN & GOGGIN
    1220 Market Street, 5th Floor
    P.O. Box 8888
    Wilmington, DE 19899-8888

                *SHELSBY & LEONI*

                /s/ Michael J. Logullo
                Michael J. Logullo
                Mlogullo@mslde.com
                221 Main Street
                Stanton, Delaware 19804
                (302) 995-6210
                Attorney for Plaintiff