IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN DONNELLY, | * |
| | * C.A. No. 08-cv-82 JJF |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| SLINGSHOT SPORTS LLC, | * |
| | * |
| Defendant. | * |

**REPLY OF DEFENDANT, SLINGSHOT SPORTS LLC, TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, Slingshot Sports LLC, through its undersigned counsel, hereby submits this Reply to Plaintiff's Response in Opposition (D.I. 21) to Defendant's Motion to Dismiss (D.I. 20) and, in support thereof, avers as follows:

1. Contrary to plaintiff's assertions, the Complaint in the present case does not satisfy the necessary conditions for exercising admiralty jurisdiction over plaintiff's maritime tort claim. The Complaint does not allege facts showing (1) that the alleged tort occurred on or over "navigable waters"; (2) that the type of incident alleged has "a potentially disruptive impact on maritime commerce"; and (3) that the conduct at issue bears a "substantial relationship to [a] traditional maritime activity." Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995).

2. First, the alleged tortious event did not occur on a vessel in navigable waters. Congress has defined the term vessel in 1 *U.S.C.* § 3 to include "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." Slingshot Sports LLC stands upon its prior arguments that the kiteboard does not meet the definition of "vessel" for purposes of invoking federal maritime jurisdiction. The kiteboard

was not used, or intended to be used, to carry freight or passengers from one place to another, and was not an instrument of navigation or commerce.

Furthermore, for purposes of determining admiralty jurisdiction, the tort "occurs" where the negligence "takes effect, not where the negligent act occurred." *See* Butler v. American Trawler Co., Inc., 887 F.2d 20 (1st Cir. 1989). The place of the injury is the determinative factor. In the present case, the tort did not occur on navigable waters because the negligence took effect in a tidal marsh. Plaintiff's injuries did not occur at sea.

Courts have relied upon the case of The Daniel Ball, 77 U.S. 557 (1870), to set forth the basic navigability test for purposes of admiralty jurisdiction. The Daniel Ball articulates the definition of navigable waters as:

> Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water. Id. at 563.

Here, even assuming that the kiteboard is a "vessel", which is denied, the tort did not occur when this alleged vessel was sailing upon the high seas or on navigable waters. Nothing in the record suggests that this tidal marsh is, or has ever been, an artery of maritime commerce sufficient to support a finding of navigability necessary to the exercise of federal admiralty jurisdiction. The accident site is separated from the high seas, and therefore from any interstate or international waterway. The situs in issue is not capable of being used as an interstate highway for commercial trade or travel in the customary modes of travel on water.

Consequently, the locality test is not satisfied and the court lacks admiralty jurisdiction over the lawsuit.

3.  However, even if the locality test was satisfied, which is denied, the mere fact that the alleged wrong occurs or is located on or over navigable waters is not of itself sufficient to turn a negligence case into a maritime tort. The wrong must also have a potentially disruptive impact on maritime commerce and bear a significant relationship to traditional maritime activity. The type of incident alleged in this case does not have a potentially disruptive impact on maritime commerce. Sisson v. Ruby, 497 U.S. 358, 364 (1990). The incident in question cannot be seen to fall "within a class of incidents that posed more than a fanciful risk to commercial shipping." Grubart, 513 U.S. at 539.

The incident here which led to plaintiff's injuries does not amount to a hazard to maritime commerce. Plaintiff's injuries did not come about as the result of a collision at sea, or from some hidden danger on the seas, but as the result of allegedly defective equipment. The injuries occurred after he was lofted into the air by a gust of a wind and dropped in a tidal marsh. It is difficult to see how this particular recreational kiteboarding incident could result in anywhere near the degree of disruption caused by the two boats which collided on the river in Foremost Ins. Co. v. Richardson, 457 U.S. 668 (1982), or the marina which burned in Sisson v. Ruby, 497 U.S. 358 (1990). Unlike Foremost, this incident did not involve a collision between pleasure boats on navigable waters, and therefore, did not have a potential disruptive impact upon maritime commerce. Moreover, any investigation or search and rescue operations could not have disrupted commercial navigation in and around the navigable waters. Furthermore, the medical treatment of plaintiff at the tidal marsh would not have carried any potential to disrupt maritime commerce. The incident in question could not have led to restrictions on navigational

use, therefore, the incident cannot be found as having a potentially disruptive impact on maritime commerce.  Thus, because of the above factors, the incident did not have the potential to disrupt maritime commerce.

    4.    Third, the conduct at issue does not bear a substantial relationship to traditional maritime activity.  The Supreme Court issued guidance on this issue in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249 (1972).  The Court observed that admiralty law deals with the problems of navigation, collision, sinking, and seaworthiness.  "It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage."  Executive Jet, at 270.  Moreover, the Supreme Court indicated in Sisson that it is important to identify the specific activity involved.  Plaintiff's argument that the conduct at issue bears a substantial relationship to traditional maritime activity merely assumes that the design and manufacture of the kiteboard is a traditional maritime activity.  The cases, however, cited by plaintiff are distinguishable from the present case in that they involved boats or vehicles that are in fact vessels governed by the uniform rules of travel.[1]  Unlike those cases, the kiteboard at issue is not a vessel and the activity here does not involve the transportation of passengers or freight from one place to another.  Rather, the important facts in the present case include the fact that plaintiff's injuries did not take place on a vessel, the case does not involve a collision between vessels, thereby implicating the need for uniform rules of navigation, it does not involve the storage and maintenance of vessels at a marina, and it cannot be characterized as

---

[1] In Hassinger v. Tideland Elec. Membership Corp., 781 F.2d 1022 (4th Cir. 1986), the court determiend that there was admiralty jurisdiction over negligence claim by pleasure boat sailors against boat manufacturer, marketer, supplier and seller.  The Court addressed four factors in determining whether the alleged wrongs satisfied the nexus test: (1) the functions and roles of the parties; (2) the type of vehicles and instrumentalities involved; (3) the causation and type of injury; and (4) traditional concepts of the role of admiralty law.  Roane v. Greenwich Swim Committee, 330 F.Supp.2d at 314-15, involved a products liability claim involving a 27 foot, twin engine Tiara 2700 Continental model motor vessel.  In Acceptance Ins. Co. v. SDC, Inc., 952 F.Supp. 644 (E.D. Mo. 1997) the Court determined that carrying passengers on a boat on a navigable waterway was a traditional maritime activity.  Likewise, in Burke v. Quick Lift, Inc., 464 F.Supp.2d 150, the court determiend that the conduct at issue bore a substantial relationship to the traditional maritime activity of the manufacture and design of a pleasure boat.

a case of life salvage on navigable waters.  There are no issues in this case which activate the federal interest in protecting maritime commerce.

The Supreme Court cautioned in a footnote in <u>Foremost Insurance</u>, 457 U.S. at 675 n. 5, that "not every accident in navigable waters that might disrupt maritime commerce will support federal admiralty jurisdiction."  The example cited in the footnote which rejected admiralty jurisdiction was <u>Executive Jet</u>, where, although "an aircraft sinking in the water could create a hazard for the navigation of commercial vessels in the vicinity," this "potential hazard to maritime commerce" did not arise "out of activity that bears a substantial relationship to traditional maritime activity."  <u>Id</u>.  The Court concluded in <u>Foremost</u>, that traditional admiralty concerns arise whenever the rules of navigation are implicated in a particular suit; a pleasure boat's failure to follow the "uniform rules of conduct" that govern navigation on navigable waters could have a "potential disruptive impact" on maritime commerce just as surely as could a similar transgression by a commercial vessel.  Thus, courts have found that the navigation of boats in navigable waters clearly falls within the substantial relationship, <u>Foremost</u>, 475 U.S. at 675, storing them at a marina on navigable waters is close enough, <u>Sisson</u>, at 367; whereas in flying an airplane over water, <u>Executive Jet</u>, 409 U.S. at 270-271, and swimming, <u>Id</u>. at 255-256, the relationship is too attenuated.  An allegation of navigational error is key to establishing admiralty jurisdiction when dealing with small pleasure craft.  <u>Souther v. Thompson</u>, 754 F.2d 151, 153 (4th Cir. 1985), *overruled in part by* <u>Hogan v. Overman</u>, 767 F.2d 1093 (4th Cir. 1985).  The activity involved here is not one that can be described as a traditional maritime activity.  It does not involve an alleged navigational error.  The rules of navigation are not implicated as in <u>Foremost</u>.  The relationship with a traditional maritime activity is too attenuated.  Therefore,

there is no admiralty jurisdiction over this matter and the case should be dismissed for lack of subject matter jurisdiction.

WHEREFORE, for the reasons set forth herein and in defendant's Motion to Dismiss and Memorandum of Points and Authorities, defendant, Slingshot Sports LLC, respectfully moves this Honorable Court to dismiss for lack of subject matter jurisdiction.

                MARSHALL, DENNEHEY, WARNER,
                    COLEMAN & GOGGIN
/s/ THOMAS J. GERARD
THOMAS J. GERARD, ESQ. (#2959)
KIMBERLY MEANY, ESQ. (#4740)
1220 Market Street, 5th Fl.
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4303
Attorneys for Defendant.

DATED: June 20, 2008

15/633861.v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BRIAN DONNELLY, | * |
| | * C.A. No. 08-cv-82 JJF |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| SLINGSHOT SPORTS LLC, | * |
| | * |
| Defendant. | * |

### CERTIFICATE OF SERVICE

I, Thomas J. Gerard, hereby certify that a copy of the **REPLY BRIEF OF DEFENDANT, SLINGSHOT SPORTS LLC, IN RESPONSE TO PLAINTIFF'S RESPONSE IN OPPOTION TO DEFENDANT'S MOTION TO DISMISS** in the above-captioned matter have been served by E-file on the following:

Michael J. Logullo, Esquire
221 Main Street
Stanton, DE 19804

      MARSHALL, DENNEHEY, WARNER,
         COLEMAN & GOGGIN
      /s/ THOMAS J. GERARD
      THOMAS J. GERARD, ESQ. (#2959)
      KIMBERLY MEANY, ESQ. (#4740)
      1220 Market Street, 5th Fl.
      P.O. Box 8888
      Wilmington, DE 19899-8888
      (302) 552-4303
      Attorneys for Defendant.

DATED: June 20, 2008