IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BRIAN DONNELLY,                :
                               :
        Plaintiff,             :
                               :
    v.                         :    C.A. No. 08-82-JJF
                               :
SLINGSHOT SPORTS LLC,          :
                               :
        Defendant.             :

Paul D. Bekman, Esquire and Gregory G. Hopper, Esquire of SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland. Gilbert F. Shelsby, Jr., Esquire and Michael J. Logullo, Esquire of SHELSBY & LEONI, PA, Stanton, Delaware.

Attorneys for Plaintiff.

Thomas J. Gerard, Esquire and Kimberly Meany, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, Wilmington, Delaware.

Attorneys for Defendant.

**MEMORANDUM OPINION**

March 31, 2009
Wilmington, Delaware.

Farnan, District Judge

Pending before the Court is a Motion To Dismiss For Lack Of Admiralty Jurisdiction (D.I. 20) filed by Defendant, Slingshot Sports LLC. For the reasons discussed, the Court will deny Defendant's Motion.

## I. Background

Plaintiff, a resident of the State of Maryland, originally filed this action in the United States District Court for the District of Maryland on July 24, 2007, against Defendant, a limited liability company organized and existing under the laws of the State of Washington. (D.I. 1 at ¶ 3.) Plaintiff asserts jurisdiction on the basis of the admiralty and maritime provisions found in 28 U.S.C. § 1331(1) and diversity of citizenship under 28 U.S.C. § 1332. (Id. at ¶ 4.) The case was transferred to this Court on February 8, 2008. (D.I. 12.)

By his Complaint, Plaintiff alleges that he sustained serious injuries on August 21, 2004, while using the Slingshot Fuel kiteboarding system on navigable waters off the coast of Dewey Beach. (D.I. 1 at ¶¶ 1, 6.) Plaintiff further alleges that the kiteboarding system was "developed, designed, tested, manufactured, assembled, sold, distributed, and placed into the stream of commerce by [Defendant]." (Id. at ¶ 1.)

More specifically, Plaintiff alleges that he was carried into the air by a gust of wind while using the kite and carried

1

backward towards the shore when he was then dropped with great force into a tidal marsh. (Id. at ¶ 6.) Among other injuries, Plaintiff suffered multiple spinal fractures, multiple rib fractures and fractures of his clavicle and scapula. (Id.)

Plaintiff alleges that the kiteboarding system he was using was "defective and unreasonably dangerous due to problems with its design and manufacture." (Id. at ¶ 1.) Plaintiff asserts claims against Defendant based on strict liability (Count I) and negligence (Count II) for defective design, defective manufacture, failure to incorporate adequate safety mechanisms or release systems, and failure to provide adequate warnings. (Id. at ¶¶ 12-13, 15-18.) Plaintiff also asserts a claim based on breach of the implied warranty of merchantability and fitness for a particular purpose. (Id. at ¶¶ 21-24.)

Defendant has moved to dismiss the Complaint for lack of admiralty jurisdiction. Defendant's Motion has been fully briefed by the parties and is ripe for the Court's review.

## II. The Parties' Contentions

By its Motion, Defendant contends that Plaintiff cannot establish that admiralty jurisdiction exists over his Complaint. Specifically, Defendant contends that: (1) a kiteboard does not meet the definition of a "vessel" for purposes of invoking maritime jurisdiction; and (2) the injury is not related to traditional maritime activity such as navigation on navigable

2

waters.  In the alternative, Defendant contends that if admiralty jurisdiction exists, Delaware state law should be applied in lieu of federal maritime law.

In response, Plaintiff contends that his injuries occurred on navigable waters and his kiteboard meets the definition of a vessel.  Plaintiff also contends that the incident had a potentially disruptive impact on maritime commerce and that courts have frequently found admiralty jurisdiction to exist in cases involving recreational water sport equipment.

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter.  Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction.  In this case, it appears to the Court that Defendant's Motion is based on a facial challenge to the Court's jurisdiction.

In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply.  In this regard, the Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of plaintiff.  See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  The Court may only consider the complaint and documents referenced in or attached to

3

the complaint. <u>Gould Electronics Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000). Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. <u>Mortensen</u>, 549 F.2d at 891.

**IV. Discussion**

To invoke admiralty jurisdiction over a tort claim pursuant to 28 U.S.C. § 1331(1), the plaintiff must satisfy two tests: the location test and the connection test. <u>Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1995). In applying the location test, the Court "must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." <u>Id.</u> In applying the connection test, the Court must (1) "'assess the general features of the type of incident involved' . . . [and] "determine whether the incident has 'a potentially disruptive impact on maritime commerce;'" and (2) "determine whether the 'general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" <u>Id.</u>

    A.   <u>Whether The Location Test Is Satisfied</u>

With respect to the location test, Defendant does not rely on the argument that the alleged defective manufacture of the kiteboarding system occurred on land. Indeed, the fact that the

tort may have occurred on land is not dispositive if the "substance and consummation" of the tort takes place on navigable waters. 1 Benedict on Admiralty § 172 at 11-37 (7th ed. rev. 2008) (quoting The Plymouth, 70 U.S. (3 Wall.) 20 (1865)). As one court explained in assessing whether admiralty jurisdiction existed over a products liability claim:

> [T]he locality test is met despite the fact that the allegedly defective manufacture and repair of the boat occurred on land. The tort is properly considered to have occurred on Lake Michigan because the alleged defect did not manifest itself, and the injury did not occur, until the [plaintiffs] operated the vessel in the navigable waters of Lake Michigan.

Bodnar v. Hi-Lex Corp., 919 F. Supp. 1234, 1238 (N.D. Ind. 1996). Rather, Defendants' argument focuses more narrowly on the situs of the injury. Relying on Butler v. American Trawler Co., Inc., 887 F.2d 20 (1st Cir. 1989), Defendant contends that Plaintiff cannot establish that the tort occurred on navigable waters, because "the negligence took effect in a tidal marsh. Plaintiff's injuries did not occur at sea." (D.I. 23 at 2.)

In the Court's view, however, Defendant's argument is too narrow an application of Butler. Referring to the Supreme Court's decision in Executive Jet Aviation v. City of Cleveland, 409 U.S. 249 (1972), the Butler court stated that "controlling case law holds that the tort occurs where the negligence 'takes effect,' not where the negligent act occurred." 887 F.2d at 21. However, the Court does not read the "takes effect" language to

5

be synonymous with the situs of the injury. Indeed, the Supreme Court acknowledged the difficulties in applying this test in Executive Jet with particular emphasis to aeronautical torts. This case, while presenting different circumstances, presents similar concerns. In the Court's view, a location inquiry based solely on the situs of the injury could lead to anomalous results depending on the fortuity of where the injured person landed. In his Complaint, Plaintiff alleges use of the kiteboard "in the navigable waters off the coast of Dewey Beach, Delaware." (D.I. 1 at ¶¶ 1, 6.) Defendant does not assert any factual challenge as to whether this stretch of water was navigable as Plaintiff alleges. Accordingly, the Court concludes that Plaintiff's allegation that he was using the alleged defective kiteboard in navigable waters is sufficient to establish that the tort occurred in navigable waters for purposes of the location test.[1]

B. Whether The Connection Test Is Satisfied

With respect to the issues of whether the general character of the incident can be said to have a potentially disruptive impact on maritime commerce and whether the activity giving rise to the incident bears a substantial relationship to traditional maritime activity, the Court concludes that Plaintiff has

---

[1] Having reached this conclusion, the Court need not reach the alternative inquiry of whether the injury, if suffered on land, was caused by a vessel on navigable waters. The operative inquiry here being whether a kiteboard is a "vessel" for purposes of admiralty jurisdiction.

6

satisfied both of these prongs of the connection test. The potential disruption test has been construed broadly by courts to encompass cases involving swimmers injured by boats[2], recreational vessels that have spun out of control[3], people injured by failed equipment who might be in need of rescue assistance[4], and defective vessels where the injury may cause disruption to the vessel's navigation or to other craft.[5] Many

---

[2] Roane v. Greenwhich Swim Committee, 330 F. Supp. 2d 306 (S.D.N.Y. 2004) (exercising jurisdction over claim for negligence and defective design brought by swimmer injured by boat during rescue attempt and stating with respect to effect on commerce that "Long Island Sound is traversed by commercial vessels of various sizes and purposes, and those on board a boat in the Sound giving their full attention to the saving of the life of a swimmer in difficulty may well be distracted from hazards posed by the approach of other boats unaware of the rescue in progress, or coming at speed in an effort to assist")

[3] Szollosy v. Hyatt Corp., 208 F. Supp. 2d 205 (D. Conn. 2002) (exercising jurisdiction over products liability, negligence and breach of warranty claim in connection with jet ski accident and holding that effect on commerce existed because collision could have made commercial travel in the water difficult and medical treatment of injured person in the water could have disrupted maritime commerce).

[4] Burke v. Quick Lift, Inc., 464 F. Supp. 2d 150, 156 (E.D.N.Y. 2006) (finding that the improper installation, and subsequent failure, of a device designed to lift small boats from the water onto a vessel while the vessel is docked in navigable waters, poses more than a fanciful risk of disrupting commercial activity because, among other possibilities, it could pose a hazard to nearby vessels and commercial traffic could be disrupted to provide medical treatment to injured persons).

[5] Mink v. Genmar Industries, Inc., 29 F.3d 1543, 1546 (11th Cir. 1996) (exercising admiralty jurisdiction over claim that pleasure boat was defectively designed because it lacked adequate handrails and noting that characterization of the

of these cases make the point that rescue efforts and after-accident investigations can lead to disruption of maritime commerce. At this juncture, the Court cannot find any reason in the case law to conclude that the type of accident that occurred in this case is not one which could lead to disruption in maritime commerce.

As for whether the incident bears a substantial relationship to traditional maritime activity, the Supreme Court has framed the inquiry as "whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." Grubart, 513 U.S. at 538-539. Defendant contends that its conduct is too attenuated to meet this test; however, Plaintiff contends that the design and manufacture of a recreational device used on navigable waters satisfies this inquiry. Plaintiff alleges this type of activity in the Complaint, and the Court concludes that this allegation is sufficient to establish jurisdiction. Calhoun v. Yamaha Motor Corp., U.S.A., 216 F.3d 338 (3d Cir. 2000) (exercising admiralty

---

incident as "injury to a passenger in proximity to the operator on a vessel during navigation in navigable waters" posed a potential risk to commerce because, among other things, the injured passenger "could have fallen forward, striking the pilot or controls, thus directly interfering with the navigation of the craft and potentially causing an accident with another craft.")

8

jurisdiction over products liability claim arising from WaveJammer that struck an anchored boat and stating that although a WaveJammer "is a type of pleasure craft that is almost exclusively used for recreational purposes," the Supreme Court's "recent jurisprudence-namely Richardson and Sisson-indicates that so long as the incident in question, and the vehicles utilized therein, bears some relation to traditional maritime activity and could, in any way, impact upon the flow of maritime commerce, admiralty jurisdiction is proper"). Accordingly, the Court will deny Defendant's Motion To Dismiss.

## V.  Conclusion

For the reasons discussed, the Court will deny Defendant's Motion to Dismiss.

An appropriate Order will be entered.